Robert Earl CLINKSCALE *v.* STATE of Arkansas

CA CR 84-81                          680 S.W.2d 728

Court of Appeals of Arkansas
Division I
Opinion delivered December 12, 1984
[Rehearing denied January 9, 1985.]

*Wilson, Harp, O'Hara & Myers,* by: *John David Myers,* for appellant.

*Steve Clark,* Att'y Gen., by: *Michael E. Wheeler,* Asst. Att'y Gen., for appellee.

LAWSON CLONINGER, Judge. This appeal from appel-

lant's criminal conviction consists of four points for reversal. We find no error on the trial court's part with respect to any of the points raised, and therefore we affirm.

Appellant was charged with theft by receiving under Ark. Stat. Ann. § 41-2206 (Repl. 1977) following his arrest for the possession of a stolen gold Rolex wrist watch. The prosecutor sought sentence enhancement under the terms provided for habitual offenders at Ark. Stat. Ann. § 41-1001.

At an omnibus hearing held before the trial, the lower court granted appellant's motion to suppress the admission of the watch as evidence on the grounds that it had been seized without a search warrant in violation of the Fourth Amendment. Two days later the trial court reconvened the omnibus hearing after the State had filed a brief requesting reconsideration of the matter. The court heard the testimony of a jeweler who said that appellant had brought the watch to his shop, claimed that it was "hot," and asked to have the serial numbers removed. The police officer who received the watch from the store manager was examined, as well. At the conclusion of the hearing the court reversed its earlier ruling and denied appellant's motion to suppress the watch.

The case was tried to a jury, and appellant was found guilty of theft by receiving. The value of the watch was determined to be in excess of $2,500, rendering the crime a class B felony pursuant to § 41-2206(5)(a). Before the jury went on to consider sentence enhancement under the habitual offender statute, the members were polled at appellant's request. During the polling, one of the defense witnesses, with the verbal encouragement of appellant, asserted that one of the jurors was a prostitute. The court admonished the jury not to allow the outburst to affect their sentencing decision, and two jurors acknowledged that their decision would indeed be affected. Appellant moved for a mistrial. The court allowed the sentencing phase to proceed and postponed consideration of the motion.

Upon its return, the jury stated that it had "agreed unanimously not to fix the sentence and to allow the judge to fix the sentence if possible." Appellant objected that the

court had access to prejudicial information. The court then passed judgment under the provisions of Ark. Stat. Ann. § 43-2306 (Repl. 1977), sentencing appellant to fifteen years in the Arkansas Department of Correction and assessing a $10,000 fine. From that decision this appeal arises.

Appellant argues first that the court erred in denying the defense motion to suppress the introduction into evidence of the gold Rolex watch. He claims that the seizure without a search warrant violated his Fourth Amendment rights. The court's denial of appellant's motion was grounded on two reasons: (1) when appellant, as bailor, gave the property to the jeweler, as bailee, he gave him apparent authority to act with reference to that property under the circumstances; (2) the jeweler made a telephone call to the police officer informing him that the serial numbers might soon be removed, thus justifying a warrantless seizure under exigent circumstances.

It is appellant's view that he retained an expectation of privacy in the gold watch despite any apparent authority vested in the jeweler. He relies on *United States* v. *Butler*, 495 F.Supp. 679 (E.D. Ark. 1980), a case dealing with a third party consent to the warrantless search of a bureau drawer and a locked suitcase discovered in the defendent's room. The federal court held that the defendant had a reasonable expectation of privacy in the drawer and suitcase and that his father had no lawful authority to consent to the search. The court laid particular emphasis on the absence of exigent circumstances.

We believe that the circumstances of the present case distinguish it from *Butler, supra.* Appellant's reasonable expectation of privacy in the gold watch was considerably diminished when he delivered it to a jeweler with instructions to efface the serial number and to add decorative designs. These directions entailed the shipping of the watch to New York for the requested alterations. Jewelers in both Little Rock and New York thus had access to the watch, and, while appellant's expectation of privacy may have continued, the reasonableness of the expectation cannot be said to have been of the same degree as that of the defendant in

*Butler.* A watch openly delivered to a jeweler in a business open to the public is not the same thing as a closed bureau drawer or a locked suitcase in a private residence.

Third person authority may be based upon the fact that the third person shares with the absent target of a search a common authority over, general access to, or mutual use of the place or object sought to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third party may grant this permission to others. *United States* v. *Matlock,* 415 U.S. 164 (1974); *United States* v. *Butler, supra.* In the instant case, for the purposes of the bailment, appellant and the jeweler shared common authority over and general access to the watch in question. The jeweler, moreover, initiated the contact with the police, not the other way around. As manager of the shop, the jeweler was clothed with ample authority to notify the police of suspicious circumstances surrounding goods brought to his place of business. In fact, if the jeweler had followed the instruction of appellant without notifying the police, the jeweler may well have become a participant in the crime. Appellant had voluntarily surrendered the watch to the jeweler, expecting that he would do whatever would be necessary to comply with his instructions regarding the changes he wished to be made. The fact that appellant told the jeweler the watch was "hot" clearly indicates that he did not regard the issue of privacy as being of the first importance; it further supports our conclusion that appellant extended sufficient authority to the jeweler to consent to the taking of the watch by the police.

Appellant attacks the trial court's finding of exigent circumstances, contending that the time between the police officer's conversation with the jeweler and the seizure of the watch on the following day provided more than enough opportunity for the officer to obtain a warrant. Yet, as the United States Supreme Court observed in *Cardwell* v. *Lewis,* 417 U.S. 583 (1974): "The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's

necessitating prompt police action." A real danger existed in the present case that the watch seized might have been altered beyond recognition if not destroyed. Although *Cardwell, supra,* applied to the seizure of a car, the concept of mobility underlying the case is applicable in the present set of circumstances when a watch about to be defaced is involved.

In his second point for reversal, appellant urges that the trial court erred in admitting the watch into evidence over his objection that an inadequate chain of custody had been established. Specifically, appellant complains that a proper foundation for authentication should have included testimony regarding the handling of the watch in New York. As he puts it, a "gap" appears in the chain of custody from the time part of the watch was mailed to New York to its return to Little Rock.

Appellant's argument would have been more relevant had it addressed a break in the chain after the watch was seized. No objection was made, however, to the handling of the watch once it was in police custody. Only the dial of the watch had been sent to New York; it was mailed in a parcel bearing appellant's name and was returned in the same manner. The owner was able to identify it positively.

We recently dealt with the issue of chain of custody in *Meador* v. *State,* 10 Ark. App. 325, 664 S.W.2d 878 (1984). There, a weapon introduced into evidence was not in the sheriff's possession at all times and no serial number of the receipt was available. We held that the gap in that case affected the weight to be given the evidence rather than its admissibility.

> In establishing a chain of custody prior to the introduction of evidence at the trial, it is not necessary to eliminate every possibility that the evidence has been tampered with . . . The issue is whether the trial court abused its discretion in determining that in reasonable probability the integrity of the evidence was not impaired and that it had not been tampered with.

In *Davis* v. *State,* 275 Ark. 264, 630 S.W.2d 1 (1982),

the Arkansas Supreme Court found that there was little likelihood of tampering and no abuse of discretion when a judge admitted into evidence a fingerprint card that had been handled by some unknown person with the Federal Bureau of Investigation in Washington, D.C. As in the present case, the unknown person in another city was the only broken link in the chain. Here, as in *Davis, supra,* other testimony satisfied the trial court that "in reasonable probability" the evidence was genuine and had not been tampered with. We find no abuse of judicial discretion and consequently no error on this point.

Appellant's third point for reversal is that the trial court erred in refusing to grant his motion for a mistrial when two jurors declared that they would be unable to pass sentence impartially. Both jurors were reacting to the uproar caused in the courtroom by a defense witness's assertion that one of the jurors was a prostitute. It is readily apparent from a review of the record that appellant seconded the witness in her disruptive remarks:

WITNESS: Listen—
DEFENDANT: Tell them. Tell them.
WITNESS, SHERRY JONES: She cannot do that because she [a juror] has worked with me before.
DEFENDANT: She can't. That's right.
WITNESS, SHERRY JONES: She is a prostitute, your Honor.
WITNESS: Your Honor, she is a prostitute.
DEFENDANT: Sit down over there. Sit down. She's pregnant.
WITNESS: Your Honor, she is a prostitute.

The significant part appellant played in the disruption that he now claims occasioned prejudicial error cannot be overlooked by this court. His behavior at the time in question is akin to invited error, and it is settled that one who is responsible for error should not be heard to complain of that for which he was responsible. *Berry* v. *State,* 278 Ark. 578, 647 S.W.2d 462 (1983); *Kaestel* v. *State,* 274 Ark. 550, 626 S.W.2d 940 (1982). In *Illinois* v. *Allen,* 397 U.S. 337 (1970), the United States Supreme Court observed that an accused

cannot be permitted by his disruptive conduct to avoid being tried on the charges brought against him.

The trial court is granted a wide latitude of discretion in granting or denying a motion for mistrial. Except for an abuse of that discretion or manifest prejudice to the complaining party we will not reverse on that basis. *Berry* v. *State, supra; Hill* v. *State,* 275 Ark. 71, 628 S.W.2d 285 (1982). A mistrial is an extreme remedy which should be used only as a last resort. *Bateman* v. *State,* 2 Ark. App. 339, 621 S.W.2d 232 (1981). Any possibility of prejudicial error was removed by the jury's action in acknowledging their inability to determine a sentence in requesting the trial court to do so in their stead.

It is this action of the jury that forms the basis for appellant's fourth point for reversal. He argues that the court erred in sentencing him upon being informed by the jury that it had unanimously decided not to pass sentence. Such a decision by the jury is clearly indicative of the jurors' scrupulous avoidance of passing a sentence based upon prejudice. In addition, the trial judge stated that she had not been affected by the disturbance. Finally, the court's action was in compliance with Ark. Stat. Ann. § 41-802 (Repl. 1977) and Ark. Stat. Ann. § 43-2306 (Repl. 1977), which provide for the trial judge's fixing punishment in cases when "the jury fails to agree on the punishment." The trial court therefore acted within the bounds of its statutory authority.

Affirmed.

CRACRAFT, C.J., and CORBIN, J., agree.