Floyd JOHNSON *v.* STATE of Arkansas

CR 96-1478                                              944 S.W.2d 115

Supreme Court of Arkansas
Opinion delivered May 12, 1997

L.D. *Gibson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant Floyd Johnson was convicted by a jury of the rape of a thirteen-year-old female, V.J., and sentenced by the trial court to thirty-five years' imprisonment. He contends that there was insufficient evidence to support his conviction by the jury. He also contends that the court lacked the authority to fix his sentence and that it erroneously deviated from the presumptive sentencing grid when imposing his sentence. None of his arguments have merit, and we affirm his conviction.

We will address his challenge to the sufficiency of the evidence first, as this question is always considered before we decide other points for reversal. *Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993). Here, appellant was charged with raping the thirteen-year-old victim because he put his finger into her vagina. A person commits rape if he engages in deviate sexual activity with a person under fourteen years of age. Ark. Code

Ann. § 5-14-103(a)(3) (Repl. 1993). At the time of this offense, the statutory definition of deviate sexual activity was "any act of sexual gratification involving the penetration, however slight, of the vagina . . . of one person by any body member . . . of another person." Ark. Code Ann. § 5-14-101(1)(B) (Repl. 1993). The jury was so instructed.

Appellant argues that the evidence was insufficient to establish the required element of vaginal penetration. We can quickly dispose of this argument. The testimony introduced by the State clearly established vaginal penetration, "however slight." V.J. testified that she awoke on the morning in question to find appellant lying next to her with his finger placed inside of her. She testified that his finger felt like a tampon. As the State argued at trial, there is no place for a tampon to be placed other than in the vagina. V.J. testified that she was using tampons; thus, there was no question that she was familiar with how tampons feel and was competent to compare a tampon to appellant's finger.

■ ■ Evidence is substantial if reasonable minds could convict without resorting to speculation and conjecture. *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994). In response to appellant's argument that V.J.'s testimony was the only evidence of vaginal penetration, we reiterate that the testimony of a rape victim alone is sufficient to sustain a conviction if it establishes all of the elements. *Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994); Bishop v. State, 310 Ark. 479, 839 S.W.2d 6 (1992). Reasonable minds could conclude from this victim's testimony, without resorting to speculation or conjecture, that appellant penetrated her vagina with his finger. The proof was sufficient to sustain a conviction for rape.

Appellant next challenges the authority of the trial court to impose his sentence. The pertinent facts are as follows. The jury returned its verdict finding appellant guilty of rape, at around 5:18 p.m. Because of the lateness of the hour, the court called a recess before the jury commenced the sentencing phase. The court reconvened at 9:30 a.m. the next day for the sentencing phase. Appellant offered no testimony at the sentencing phase, and the State presented evidence that appellant had been previously

convicted of rape and of sexual solicitation of a child in 1981. After hearing the evidence, the jurors retired to the jury room at 10:25 a.m.

After the jury retired, appellant's counsel brought to the court's attention that there had been an article in the previous day's edition of the *Jonesboro Sun* regarding a sexual abuse charge against appellant, which involved another victim and which had been severed from this case. The jurors were escorted back into the courtroom at 10:35 a.m. At that time, the court asked if anyone had read the article, and one juror replied that he had. Appellant moved for a mistrial on both the guilt and sentencing phases. The court denied the motion for mistrial on the guilt phase, but found that the sentencing phase had been tainted and stated that the only remedy was for the court to impose sentence.

Appellant made a motion for new trial, in which he argued that the court did not have authority to sentence appellant because of the statutory provisions of Ark. Code Ann. § 5-4-103. He argued that the exception that allows sentencing by the trial court when the jury is unable to reach a verdict only applies to a hung jury. The court denied the motion for a new trial on the basis that the court was authorized to fix punishment when the jury was unable to agree upon the punishment because only eleven jurors remained after one was disqualified.

■■  The trial court was correct. Section 5-4-103 of the Arkansas Code Annotated provides:

> (a) If a defendant is charged with a felony and is found guilty of an offense by a jury, the jury shall fix punishment in a separate proceeding as authorized by this chapter.

> (b) Except as provided by §§ 5-4-601—5-4-605, 5-4-607, and 5-4-608, the court shall fix punishment as authorized by this chapter in any case where:

> (1) The defendant pleads guilty to an offense; or

> (2) The defendant's guilt is tried by the court; or

> (3) The jury fails to agree on punishment; or

(4) The prosecution and the defense agree that the court may fix punishment; or

(5) A jury sentence is found by the trial court or an appellate court to be in excess of the punishment authorized by law.

We have held that the trial court may only fix punishment under the specifically enumerated circumstances as set out in the statute. *Richards v. State*, 309 Ark. 133, 827 S.W.2d 155 (1992); *Tharp v. State*, 294 Ark. 615, 745 S.W.2d 612 (1988). Although we have long held that the exceptions that allow sentencing by the trial court do not violate Ark. Const. art. 2, §§ 7, 10, and 21, which guarantee a defendant a right to a jury trial, *Froman v. State*, 232 Ark. 697, 339 S.W.2d 601 (1960), the trial court's authority to sentence is limited to the exceptions as set out in the statute.

The trial court was correct in determining that the jury could not agree. When it becomes clear that a member of the jury panel cannot be impartial in passing a sentence, the jury cannot agree. Such a situation arose in *Clinkscale v. State*, 13 Ark. App. 149, 680 S.W.2d 728 (1984), when the trial court passed sentence after the jury had unanimously agreed not to impose a sentence. The jurors informed the trial court that two members of the panel were no longer able to be impartial after one of the defense's witnesses asserted that one of the jurors was a prostitute, and the defendant seconded her remarks. The court of appeals found that the trial court had acted within the bounds of its statutory authority under the exception that allows it to fix punishment when the jury cannot agree.

Recently, in *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997), the trial court correctly imposed sentence when the jury was deadlocked. Eleven jurors voted for a forty-year sentence, and one was holding out for a life sentence. We think that the jury in that case would similarly not have been "able to agree" had the one juror become tainted by prejudicial information, or as in *Clinkscale, supra*, become incapable of rendering an impartial decision. The statute authorizes the court to fix punishment after the jury has found the defendant guilty, if during the sentencing phase the jury fails to agree on punishment. Ark. Code Ann. § 5-4-103(b)(3). Here, the jury was unable to agree on

punishment, and the court exercised its statutory authority to fix punishment.

Appellant's final point is that the trial court erred in departing upward from the presumptive sentence of 312 months and imposing a sentence of 420 months. Under Ark. Code Ann. § 16-90-804, the trial court may deviate beyond a five percent range above the presumptive sentence when the following factors are present:

> (d) The following is a nonexclusive list of factors which may be used as reasons for departure:
>
> . . .
>
> > (2) Aggravating factors:
> >
> > . . .
> >
> > > (B) The offender knew or should have that the victim was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health;
> > >
> > > . . .
> > >
> > > > (I) The offense was a violent or sexual offense committed in the victim's zone of privacy, e.g., his home or the curtilage thereof[.]

The trial court noted that the departure was justified on account of the statutory factors quoted above; that is, the victim's young age and the fact that the crime had been committed in the bed in her own home where she was sleeping. Appellant argues on appeal that the victim, who was thirteen at the time of the offense, was not "extremely young" within the meaning of the statute. Further, he contends that the "zone of privacy" factor does not apply because there was no showing that he broke into the home to rape the victim. Appellant was a friend of the victim's parents, and was a guest in her home when he committed the rape.

This argument is not preserved for appeal. The abstract does not indicate that appellant objected in the trial court when his sentence was imposed, or at any point afterward. As we observed in *Reece v. State*, 325 Ark. 465, 928 S.W.2d 334 (1996):

> We have repeatedly held that, where the record reflects a total absence of any objections after the jury's findings and sentencing are read by the court, we will not consider issues of such nature raised for the first time on appeal.

*Id.* at 466, 928 S.W.2d at 335.

The judgment of the trial court is affirmed.

NEWBERN, J., dissents.

DAVID NEWBERN, Justice, dissenting. Arkansas Code Ann. § 5-4-103(a) confers the right of a person convicted of a felony to be sentenced by the jury that found him or her guilty. Subsection (b) of that statute states the exceptions to subsection (a) and, in other than a capital case, allows the court to fix punishment if one of several situations occurs. The majority opinion agrees that one of the expressly stated exceptions must apply in order for the court rather than the jury to determine the sentence. The exception selected by the majority in this case is (b)(3), "The jury fails to agree on punishment."

The only authority cited by the majority opinion as being in support of applying subsection (b)(3) in this case is *Clinkscale v. State,* 13 Ark. App. 149, 680 S.W.2d 728 (1984). After a jury found Mr. Clinkscale guilty, and while the members of the jury were being polled prior to returning to the jury room for deliberation on the sentence, Mr. Clinkscale urged one of the witnesses to disrupt the proceedings by declaring that a juror was a "prostitute." After the disruption had occurred, Mr. Clinkscale moved for a mistrial which was denied. The Trial Court admonished the jurors not to allow the disruption to affect their deliberations on the sentence. The jurors returned to the jury room but later informed the Trial Court they had voted unanimously not to pass sentence.

The Court of Appeals opinion approved the refusal to grant Mr. Clinkscale's mistrial motion, noting that the ground for the motion had been created by the defendant. It also approved the sentencing of Mr. Clinkscale by the Trial Court as authorized by Ark. Stat. Ann. § 43-2306 (Repl. 1977), a predecessor of § 5-4-

103, which allowed the judge to fix punishment when the jury failed to agree.

In the *Clinkscale* case, there was deliberation by a jury but no sentence reached by it, apparently for the reason that some of the jurors realized they were irreparably affected by the defendant's conduct. Whether or not that constituted "failure to agree," in the sense intended by the General Assembly, it is a far cry from this case in which the jury was dismissed for tainting misconduct of a juror after having been in the jury room for ten minutes.

I thoroughly agree with all the cases cited by the majority in which there was sentencing by the court after the jury deadlocked and thus failed to agree, but again, that is precisely the instance in which subsection (b)(3) applies. Had the General Assembly wished to make an exception to jury sentencing in the event of an occasion requiring dismissal of the jury prior to its rendering a sentence, it would have said so. It did not.

I respectfully dissent.